**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **EXOTICRIDGE CRYPTO COMPANY LLC** | ) | |
| | ) | |
| | ) | |
| **PLAINTIFF,** | ) | |
| | ) | **Case No. ______________** |
| **V.** | ) | |
| | ) | |
| **HAWKINS COUNTY, TENNESSEE** | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| **DEFENDANT.** | ) | |

# COMPLAINT

## INTRODUCTION

1. Technology is evolving like never before, and Americans today benefit from these rapid advancements. But the technologies we use every day are dependent on data centers and storage. Data centers are critical infrastructure for the modern economy, enabling everything from cloud computing, online commercial transactions, and everyday digital communications. Yet local governments across the country, including in Tennessee, have banned data centers—despite their importance and economic benefit. Neither the federal nor the Tennessee Constitution countenances such bans—which prevent entrepreneurs from engaging in productive use of data centers on their own property, not because of any harm they cause, but simply because some residents did not want them.

2. This is a civil rights complaint seeking relief against Hawkins County's arbitrary and unreasonable ban on all data centers and cryptocurrency mining. Hawkins County purports to be a "Constitutional Sanctuary County," where property owners are free to use their land without government interference. Yet, in direct contradiction of that principle, the County passed a resolution imposing a sweeping prohibition on an entire industry, without regard to the actual impact of any specific project. The ban does not distinguish between data centers that draw energy from the existing grid and possibly harm the public and data centers that are self-sufficient and present no discernible harm. Indeed, even the Hawkins County Mayor acknowledged the "resolution is totally unconstitutional."

3. Due to Hawkins County's lack of land use controls, Plaintiff began substantial investment to open a cryptocurrency mine in Hawkins County. Plaintiff's project is completely self-sufficient. The operation does not use public utilities or infrastructure and has no discernible impact on others or the environment. Yet, even with this knowledge, Hawkins County categorically banned Plaintiff's intended operation. While local governments have the authority to regulate land use, such regulations must have a substantial relationship to public health, safety, or welfare. A blanket ban on data centers and cryptocurrency mining that cause no harm is arbitrary and irrational. The selective enforcement of this ban—targeting a single industry while leaving others with larger public impacts unregulated—further underscores its discriminatory nature.

4. Hawkins County's ban infringes upon Plaintiff's rights under the Federal and Tennessee Constitutions to use its property, operate a lawful business, and receive equal protection under the law. Because Plaintiff relied on Hawkins County's regulatory framework, sought an

associated air permit, acquired equipment, and Hawkins County does not have a zoning code and does not require building permits, Plaintiff also had a vested right to operate its cryptocurrency mine. Moreover, Hawkins County's ban was riddled with procedural defects that violated Tennessee law. This lawsuit seeks to vindicate Plaintiff's constitutional and legal rights and to reaffirm that property owners may freely use their land, provided their use does not infringe on the rights of others.

## JURISDICTION AND VENUE

5. Plaintiff bring this civil rights lawsuit pursuant to 42 U.S.C. § 1983 for the violation of their equal protection and due process rights secured by the Fourteenth Amendment to the United States Constitution. Plaintiff also alleges violations of their rights under the Tennessee Constitution and Tennessee Law.

6. This Court has jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331 (federal question) and § 1343(a)(3) (redress for deprivation of civil rights). Declaratory relief is authorized by the Declaratory Judgment Act, 28 U.S.C. § 2201. This Court has jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367 (supplemental jurisdiction).

7. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because Defendant is based in this district and because a substantial part of the events or omissions giving rise to the claim occurred and continue to occur in this district.

## PARTIES

8. Plaintiff ExoticRidge Crypto Company LLC is made up of entrepreneurial individuals with a strong belief in the future of Bitcoin and cryptocurrency. In 2022, its founders created ExoticRidge to combine their experience in energy production with cryptographic computing

to develop innovative solutions for digital currency mining. ExoticRidge designs its projects to use unconventional energy sources to generate reliable and low-cost power more sustainably. ExoticRidge currently operates two small Bitcoin mining operations in Kentucky. Will Daugherty is a founder and currently the CEO of ExoticRidge.

9. Defendant Hawkins County is a county and political subdivision of the State of Tennessee. A county government is a person within the meaning of 42 U.S.C. § 1983. At all times relevant, Hawkins County has acted and continues to act under the color of law.

## LEGAL BACKGROUND

10. Counties in Tennessee have no inherent powers to regulate private property and land use.

11. In Tennessee, counties are limited to the powers that the Tennessee General Assembly has delegated to them.

12. The General Assembly has vested counties with the power to enact and amend zoning regulations governing land use. *See* Tenn. Code Ann. § 13-7-101.

13. If counties elect to exercise the power of zoning, counties must follow certain procedures, such as creating a zoning plan, certifying the zoning plan to the county's legislative body, establishing a regional planning commission, submitting the ordinance to the planning commission for approval, holding a public hearing, and providing specified notice and publication. *See* Tenn. Code Ann. §§ 13-7-102, 104, 105.

14. Counties are under no obligation to enact zoning in their jurisdictions.

15. The General Assembly, under "The County Powers Act," has granted certain police powers to counties that have not enacted county-wide zoning. *See* Tenn. Code Ann. § 5-1-118.

16. The County Powers Act allows counties that have not enacted county-wide zoning with a two-thirds majority vote to regulate nuisances and some land use. Tenn. Code Ann. § 5-1-118(c).

17. The County Powers Act gives counties the authority to "exercise those powers granted to all or certain municipalities by § 6-2-201(22) and (23)." *Id.*

18. However, as the Tennessee Supreme Court recently reaffirmed, "a local government may not circumvent the legislative guardrails put in place to protect citizens' use of their property by 'labeling a zoning act a mere exercise of police power.'" *Tinsley Props., LLC v. Grundy Cnty.*, 2026 WL 515396, at *3 (Tenn. Feb. 25, 2026) (citations omitted).

## FACTUAL ALLEGATIONS

**Hawkins County Does Not Regulate Private Property**

19. Hawkins County publicly holds itself out as a "Constitutional Sanctuary" with no zoning restrictions or code enforcement.

20. As a result, Hawkins County does not issue building permits.[1]

21. On September 9, 2023, the Hawkins County Commission reaffirmed that Hawkins County was a Constitutional Sanctuary and that "overreaching government regulations on people's private property are contrary to the rights afforded to citizens by their creator and the Constitution." The Commission passed a Resolution to never adopt powers granted under the County Powers Act or similar powers afforded under state law. *See* Resolution No. 2023/09/03, attached as Exhibit 1.

[1] Hawkins County, Tennessee, https://www.hawkinscountytn.gov/ (last visited March 17, 2026).

22. Hawkins County has not enacted county-wide zoning and has not conducted the required procedures necessary to invoke the power of zoning under state law. Hawkins County, therefore, has no authority to issue zoning regulations.

23. Industries and land use of all kinds are therefore presumed valid, and no county permits are required to operate within Hawkins County.

**ExoticRidge's Bitcoin Mine in Hawkins County**

24. ExoticRidge is a small business founded in 2022. The company currently runs two small Bitcoin mines in Kentucky.

25. A data center is a physical, secure facility that houses an organization's IT infrastructure, including networked computers, servers, and storage systems used to process, store, and distribute data.

26. Cryptocurrency mining is a form and subset of a data center.

27. Bitcoin is a form of cryptocurrency designed to function as a digital medium of exchange. Since its creation, Bitcoin has become the most widely adopted and valuable cryptocurrency and has gained substantial popularity worldwide.

28. Bitcoin mining is the process of creating new Bitcoins, where powerful computers solve complex mathematical puzzles to verify transactions on the blockchain and secure the network. Miners who successfully validate blocks of transactions are rewarded with newly created Bitcoin and transaction fees.

29. In or around 2023, NGL Supply Company—now Bulls Gap Fractionation Company—constructed and began operating a natural gas liquids fractionation facility in Bulls Gap, a small community located in Hawkins County, Tennessee.

30. The facility separates raw natural gas liquids into component products, including ethane, propane, and butane, which are marketed in the region. However, ethane is an excess byproduct produced at the facility that is constantly burned off through a gas flare through a 45-foot-high pipe located on the property.

31. Because the facility generates excess ethane that would otherwise be flared, NGL Supply Company approached ExoticRidge regarding the possibility of utilizing that ethane as a fuel source to generate electricity for a Bitcoin mining operation.

32. ExoticRidge, in reliance on Hawkins County's status as a Constitutional Sanctuary and the opportunities available with the existing fractionation plant, believed that Hawkins County was a great location for their next Bitcoin mining operation.

33. ExoticRidge then planned and initiated development of a small-scale, off-grid Bitcoin mining facility on a parcel at 1496 Hwy 66, Bulls Gap, Tennessee, utilizing ethane that is a byproduct of the natural gas liquids fractionation plant situated on the same property.

34. ExoticRidge negotiated an ethane purchase agreement and a natural gas pipeline agreement.

35. In May 2025, ExoticRidge took delivery of two natural gas generators to the ExoticRidge Facility site, with the respective generators intended to make up the electric generation for its initial deployment.

36. ExoticRidge subsequently filed for the requisite construction permit application with the Tennessee Department of Environment and Conservation Division of Air Pollution Control ("TDEC"), which TDEC determined to be complete as of September 15th, 2025.

37. TDEC issued ExoticRidge's permit to construct its Bitcoin mining operation on January 7, 2026, as permit number 98683.

38. As conditioned under ExoticRidge's permit, ExoticRidge must limit natural gas combustion and monitor its consumption. ExoticRidge must also perform testing on the emissions from its generators.

39. ExoticRidge's planned Bitcoin mine is fully self-sufficient.

40. The facility does not rely on or draw electricity from the local power grid. Instead, it operates using ethane produced on the property, which is a byproduct of the on-site fractionation facility.

41. By utilizing excess ethane that would otherwise be flared, ExoticRidge's project is intended to reduce the volume of gas currently burned off through the existing flare on the property, with the long-term goal of eliminating the flare entirely.

42. Because ExoticRidge uses power solely from the onsite ethane, the size of the project is naturally limited.

43. Beyond the two generators on-site since May 2025, any expansion involves at most one additional generator, which would require a new TDEC permit.

44. ExoticRidge's project also does not require additional infrastructure from local utilities. The project does not require upgrades to the electrical grid, new water service, new public roads, or other public infrastructure improvements.

45. The project also does not create additional demands on local schools, emergency services, or other publicly funded community services.

46. The existing gas flare on the property currently emits a steady level of noise and light as ethane is burned off. By capturing and utilizing that ethane to generate electricity, ExoticRidge's project is intended to reduce, rather than increase, the noise and light associated with the site.

47. In sum, ExoticRidge's project is designed to utilize otherwise wasted energy resources, reduce existing gas flaring, and generate economic activity within Hawkins County without imposing additional costs or burdens on the local community.

**Hawkins County Bans Data Centers and Cryptocurrency Mining**

48. Because ExoticRidge submitted a completed permit application to TDEC, a local newspaper became aware of the project.

49. On September 10, 2025, the newspaper published a story reporting on ExoticRidge's intention to establish a Bitcoin mining operation in Hawkins County.

50. Following publication of the article, widespread public opposition to the project began.

51. Although based on a misunderstanding of the nature of ExoticRidge's project, the members of the community began contacting the Hawkins County Commission, demanding that the county stop ExoticRidge's project.

52. Because Hawkins County does not maintain a zoning code or require building permits, ExoticRidge believed that it did not require county approval to construct and operate its Bitcoin mine.

53. On September 15, 2025, Will Daugherty, CEO of ExoticRidge, spoke with Hawkins County Mayor Mark DeWitte and expressed that he had no idea the project would cause such controversy within Hawkins County. During that conversation, Mr. Daugherty explained the nature of the project and indicated that many of the public concerns were based on misunderstandings in how the facility would operate.

54. On September 16, 2025, Mayor DeWitte confirmed with TDEC that ExoticRidge had submitted an application for the necessary permits.

55. That same day, Mayor DeWitte emailed the county attorney and other county commissioners, stating that "Thinking about it over the weekend, I remembered that the commission had technically already passed the County Powers Act, which allows us to write ordinances. I think I mentioned that to you previously. Using that power is the only way I could think of to stop the facility from locating here."

56. Unbeknownst to ExoticRidge and much of the public, the Hawkins County Commission previously passed a resolution adopting the County Powers Act in August of 2012, even though the County Commission in 2023 vowed to never adopt the County Powers Act.

57. On September 19, 2025, in response to media inquiries regarding whether the County could regulate noise levels, Mayor DeWitte stated that the County lacked authority to do so, explaining: "When it comes to noise level, as it stands today, there is nothing in place to regulate that in the county."

58. During the weekend of September 20 and 21, 2025, Mr. Daugherty contacted several members of the County Commission and invited them to visit the project so they could properly respond to their constituents with the correct facts.

59. At approximately 10:00 a.m. on Monday, September 22, 2025, Mayor DeWitte sent an email referencing the County Powers Act, stating: "I sort of kept it in my back pocket for a good time to use it because I didn't want to create a stir. Worked out that this was the time to pull it out!"

60. Later that same day, at approximately 1:00 p.m., County Commissioner Robbie Palmer sent Mayor DeWitte a draft resolution that would prohibit all data centers and cryptocurrency mining within Hawkins County.

61. Prior to sending Mayor DeWitte the proposed resolution banning cryptocurrency mining, Commissioner Plamer admitted in an earlier exchange that there was "zero literature anywhere that has stated that bitcoin mining is a nuisance to the community."

62. Early afternoon on Monday, September 22, 2025, three County Commissioners, including Commissioner Robbie Palmer, visited the ExoticRidge facility site. During that visit, commissioners suggested that it might be helpful if Mr. Daugherty attended the County Commission meeting scheduled for later that evening.

63. At no point during the site visit did any commissioner inform Mr. Daugherty that the County was considering banning cryptocurrency mining or that the Commission was preparing to take action that would prevent ExoticRidge from operating.

64. The September Hawkins County Commission meeting was scheduled for Monday, September 22, 2025, at 6:00 pm.

65. Approximately fifteen minutes before the meeting began, Mr. Daugherty received a phone call informing him for the first time that the Commission had drafted a resolution to ban all cryptocurrency mining in Hawkins County—including ExoticRidge's project—and that the resolution would be introduced during the meeting.

66. The published agenda for the September 22, 2025, County Commission meeting contained no reference to a proposed resolution banning data centers and cryptocurrency mining, or any other resolution or question that may impact ExoticRidge's project, in Hawkins County. September 2025 Agenda attached as Exhibit 2.

67. Although County officials had apparently been discussing the possibility of using the County Powers Act to prevent ExoticRidge's project during the week prior to the September 2025

meeting, ExoticRidge received no advance notice that such a resolution would be introduced until minutes before the meeting began.

68. At the Commission meeting, County Commissioner Robbie Palmer acknowledged that, based on his conversations with ExoticRidge, he had not been given "any reason to worry about them," but nevertheless stated that the County needed to ban cryptocurrency mining because officials "don't know who else might come in here."[2]

69. The County attorney, when asked about the legality of the resolution banning all data centers and cryptocurrency mining, including ExoticRidge's operation, stated the resolution, without more information on the actual effects of ExoticRidge's project, was suspect "because of the idea that you know picking out and seeking out just this one operation before we even know what it is next to joining industrial facility, gas facility…"[3]

70. Despite these concerns, the Hawkins County Commission voted to adopt the resolution banning all data centers and cryptocurrency mining by a vote of ten in favor and two opposed.

71. The Resolution, titled "Prohibit The Operation Of Cryptocurrency Mining And Data Center Facilities In Hawkins County, Tennessee Pursuant To The Authority Granted Under The County Powers Act Adopted By The Hawkins County Commission Via Resolution 2012/08/03," categorically bans all data centers and cryptocurrency mining operations within Hawkins County. The Resolution is attached as Exhibit 3.

---

[2] County Commissioners Meeting, September 22, 2026, at 42:38–42:54 https://www.youtube.com/watch?v=rymDYA_o9WI&list=PLDzLJoPy8CwJEJaqB3t4hRekI0WvKfPlJ&index=3 (last visited March 17, 2026).

[3] *Id.* at 49:45–50:00.

72. The Resolution states that "cryptocurrency mining and large-scale data center operations require massive amounts of electrical energy and produce continuous levels of industrial noise from generators, cooling systems, and ventilation equipment that are incompatible with Hawkins County's rural character and the peaceful enjoyment of property by its residents."

73. It further states that "such operations typically create little to no sustainable economic benefit to local communities, employing minimal staff while imposing significant environmental and infrastructure burdens."

74. The Resolution took effect immediately upon adoption and does not provide for any variances, special use permits, or administrative review processes.

75. As a result, the Resolution operates as a categorical ban on all data centers and cryptocurrency mining operations within Hawkins County.

76. Consequently, data centers or cryptocurrency mining operations such as ExoticRidge's facility—which do not rely on public utilities or infrastructure and do not harm the environment—are prohibited from operating within Hawkins County under the Resolution.

77. Despite the categorical ban on data centers and cryptocurrency mining, numerous other industrial operations continue to operate within Hawkins County, including, upon information and belief, a glass manufacturing facility, an explosives manufacturing facility, and a 452-acre silica mining operation.

78. Hawkins County has not adopted any similar prohibition on these other industrial uses.

79. Holston Electric Cooperative, which provides electricity to portions of Hawkins County, is actively constructing a site for multiple natural-gas-powered generators that are similar to the

generators proposed for ExoticRidge's facility and utilize the same ethane produced by the fractionation facility in Bulls Gap to generate electricity.

80. Holston Electric's generators will operate continuously and produce ongoing operational noise comparable to the type of noise the County cited as justification for prohibiting cryptocurrency mining.

81. Hawkins County has not prohibited Holston Electric's operations or otherwise restricted the use of similar generators within the County.

82. Hawkins County has therefore singled out data centers and cryptocurrency mining operations for categorical prohibition while allowing other similarly situated industrial uses to continue operating within the County.

**Hawkins County and ExoticRidge Attempt to Resolve their Dispute**

83. Shortly after the Resolution was passed and upon realizing that the Resolution was on questionable legal grounds, the County Commission expressed an interest in exploring "ways to work it out" with ExoticRidge.

84. In the meantime, the County opposed TDEC's issuing the final permit to ExoticRidge.

85. On September 25, 2025, County Commissioner Robbie Palmer submitted a public comment informing TDEC that the Hawkins County Commission passed a resolution banning data centers and cryptocurrency mining and requested that TDEC deny ExoticRidge's permit application.

86. Mayor DeWitte, in an email on October 21, 2025, admitted that citizens' complaints about ExoticRidge were "about a potential company they really know nothing about?"

87. Mayor DeWitte further recognized that, besides his opinion that ExoticRidge would not economically benefit the county, the other reasons for opposing ExoticRidge did not withstand scrutiny.

88. Regarding the complaint that the noise would upset cows, Mayor DeWitte stated, "When it was said that the dairy cows would no longer give the same quantity of milk, why would that concern someone? There are no dairy cows close to it."

89. Furthermore, Mayor DeWitte was skeptical that ExoticRidge's operation would decrease property values. "Is the major hurdle a decrease in property values? What would cause that decrease if they're not bothering anyone?"

90. In the end, Mayor DeWitte expressed his doubts that the Resolution would hold up in court. "The resolution we passed banning them will not hold up in court should they choose to take that road. We simply cannot outright ban one industry."

91. In an email on November 25, 2025, Mayor DeWitte again inquired if there were any other legitimate concerns with the project besides possible noise complaints.

92. Similarly, in an email on December 18, 2025, Mayor DeWitte stated: "We backed ourselves into a corner, however, with the resolution banning crypto mining and data centers." The mayor further admitted that the "resolution is totally unconstitutional" and that ExoticRidge "made significant investment in the project before it was banned."

93. During this time, ExoticRidge and the County underwent discussions to resolve the situation.

94. Eventually, ExoticRidge and the County Mayor and County Attorney finalized a proposed Settlement Agreement with the County.

95. The proposed Settlement Agreement was placed on the February 2026 Agenda for the County Board of Commissioners meeting on February 23, 2026.

96. At the Commission meeting on February 23, 2026, the Resolution titled "Approval of an Agreement by and between Hawkins County, Tennessee, and ExoticRidge Crypto Company LLC Allowing Construction and Operation of a Proposed Crypto Mining Operation Under Regulations Presented in the Agreement" failed due to the lack of a second motion.

97. The County Commissioners thus never voted on the proposed Settlement Agreement.

98. Hawkins County's ban on all data centers and cryptocurrency mining is still in full force and effect.

99. ExoticRidge is therefore legally prohibited from continuing and operating its Bitcoin mine in Hawkins County.

**Injury to ExoticRidge**

100. ExoticRidge has taken substantial steps beyond the acquisition of its initial generators and incurred significant expense related to the ExoticRidge Facility in reliance on the County's stated policy as a Constitutional Sanctuary County.

101. ExoticRidge spent money, resources, and time in preparing its facility, including applying for and receiving a TDEC permit, negotiating an ethane purchase agreement and natural gas pipeline agreement, taking delivery of two natural gas generators at the site, and taking additional steps to start its planned Bitcoin mine.

102. As a direct result of the County's Resolution banning all cryptocurrency, ExoticRidge has not been able to complete and operate its bitcoin facility.

103. ExoticRidge has lost anticipated profits of approximately $120,000 per month since the county instituted its ban.

104. The County's ban on ExoticRidge's facility will continue to damage ExoticRidge, including lost profits.

## LEGAL CLAIMS

## FIRST CLAIM FOR RELIEF

### Due Process Clause of the Fourteenth Amendment to the United States Constitution

105. The Due Process of Law Clause of the Fourteenth Amendment to the U.S. Constitution protects the right to use property and engage in lawful business from arbitrary and unreasonable government interference. Under this provision, no person may be deprived of a protected property interest unless the law bears a substantial relationship to public health, safety, or welfare.

106. Hawkins County's categorical ban on data centers and cryptocurrency mining, unsupported by any evidence of public harm, bears no substantial relationship to public health, safety, or welfare.

107. ExoticRidge's Bitcoin mining facility is self-sufficient and does not drain local electric power, nor does it rely on other public utilities.

108. ExoticRidge's Bitcoin mining facility will not materially impact the noise level already present at the planned location.

109. ExoticRidge's operation will reduce or eliminate the existing gas flaring and includes additional plans for noise mitigation.

110. ExoticRidge's project does not infringe upon the rights of others and does not harm neighbors, the community, or the environment.

111. ExoticRidge will generate economic activity within Hawkins County without imposing additional costs or burdens on the local community.

112. To prohibit ExoticRidge from engaging in a lawful business without any evidence of public harm is arbitrary and capricious, and bears no substantial relationship to public health, safety, or welfare.

113. The Hawkins County Resolution banning all cryptocurrency mining deprives ExoticRidge of a protected property interest without due process of law.

**SECOND CLAIM FOR RELIEF**

**Equal Protection Clause of the Fourteenth Amendment to the United States Constitution**

114. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the government from treating similarly situated persons differently unless the differential treatment bears a rational relationship to a legitimate governmental interest.

115. Hawkins County does not regulate or prohibit any other property use or business.

116. Hawkins County draws an arbitrary and irrational distinction between data centers or cryptocurrency mining with other industrial or commercial uses of land.

117. ExoticRidge's Bitcoin mining facility is self-sufficient and does not drain local electric power, nor does it rely on other public utilities.

118. ExoticRidge's Bitcoin mining facility will not materially impact the current noise level already created by the operation of a natural gas liquids fractionation facility in Bulls Gap. Nor does ExoticRidge create more noise than other industries present in Hawkins County.

119. To prohibit ExoticRidge from operating its Bitcoin mine, while allowing other industries that actually use public utilities such as water and electricity, is discriminatory and has no rational basis.

120. Allowing and not regulating other industries, such as Holston Electric Cooperative's operation on the same property in Bulls Gap, or a glass factory, an explosives producer, and a silica mining operation, but categorically banning data centers and cryptocurrency mining is an arbitrary distinction and does not have a reasonable relationship with a legitimate state interest.

121. Data centers and cryptocurrency mining operations such as ExoticRidge's facility are therefore similarly situated to other permitted industrial operations within Hawkins County, including facilities that consume more energy resources and operate industrial equipment.

122. Hawkins County intentionally treated ExoticRidge differently from other similarly situated properties and activities, and there is no rational basis for such treatment.

123. Hawkins County, therefore, has denied ExoticRidge its right to equal protection under the law.

## THIRD CLAIM FOR RELIEF

### Tennessee Constitution, Article I, Section 8 - Law of the Land Clause

124. Article I, Section 8 of the Tennessee Constitution provides that "no man shall be ... disseized of his freehold, liberties or privileges ... or in any manner destroyed or deprived of his life, liberty or property, but by judgment of his peers, or the law of the land."

125. Tennessee's Law of the Land provision secures citizens against the abuse of power by the government.

126. The right to own, use, and enjoy private property is fundamental in Tennessee.

127. Hawkins County's total prohibition of data centers and cryptocurrency mining bears no real and substantial relationship to the public's health, safety, or welfare.

128. Hawkins County's prohibition of ExoticRidge's Bitcoin without evidence of public harm is an arbitrary and unreasonable restriction of its property and liberty and constitutes oppressive legislation.

129. Hawkins County's categorical ban on cryptocurrency mining deprives ExoticRidge of its liberty and property in contravention of the law of the land.

**FOURTH CLAIM OF RELIEF**

**Article I, Section 8, and Article XI, Section 8 of the Tennessee Constitution**

130. Article I, Section 8 of the Tennessee Constitution guarantees "[t]hat no man shall be . . . disseized of his freehold, liberties or privileges, or . . . in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers, or the law of the land."

131. Article XI, Section 8 of the Tennessee Constitution further provides that the government may not "pass any law granting to any individual or individuals, rights, privileges, immunitie[s], or exemptions other than such as may be, by the same law extended to any member of the community, who may be able to bring himself within the provisions of such law."

132. These two clauses guarantee Plaintiff the right to equal protection under the law.

133. In Tennessee, distinctions between classes and uses of property must have a rational basis for differential treatment.

134. Due to Hawkins County's lack of county-wide zoning and regulation of private property, Hawkins County does not regulate or make distinctions between industries and land use.

135. The only land use Hawkins County has decided to exclude within the county are data centers and cryptocurrency mines.

136. Allowing and not regulating other industries, such as Holston Electric Cooperative's operation in Bulls Gap, or a glass factory, an explosives producer, and a silica mining operation, but categorically banning data centers and cryptocurrency mining is an arbitrary distinction and does not have a reasonable relationship with a legitimate state interest.

137. Hawkins County cannot demonstrate a reasonable and substantial difference between ExoticRidge's Bitcoin mining operation and other industries, which are all permitted to operate in Hawkins County.

138. Hawkins County, therefore, has denied ExoticRidge its right to equal protection under the law.

**FIFTH CLAIM FOR RELIEF**

**Vested Rights/Grandfather Clause**

139. The vested rights principle in Tennessee is a constitution-based limitation on government actions that interfere with a landowner's use of his or her land.

140. Tennessee law prohibits local governments from infringing on a vested right to develop.

141. Tennessee Code Annotated section 13-7-208(b), referred to as the "grandfather clause," also protects operating businesses from new zoning law changes.

142. Hawkins County has not enacted county-wide zoning and does not regulate private property.

143. ExoticRidge relied in good faith on Hawkins County's representation and stated policy that it was a Constitutional Sanctuary, that no building permits were required, and that Hawkins County would never adopt the County Powers Act.

144. Based on the law and policy in Hawkins County, ExoticRidge made significant investments in its operations.

145. ExoticRidge applied for a TDEC permit, purchased multiple expensive generators and moved those generators on site, and purchased relevant infrastructure or made deposits on other infrastructure.

146. ExoticRidge has a vested right to develop the property for its intended use as a Bitcoin mine.

147. In addition, because Hawkins County changed its restrictions to prohibit cryptocurrency after not regulating any private property, ExoticRidge is grandfathered under state law to continue its Bitcoin mining operation.

**SIXTH CLAIM FOR RELIEF**

**Exclusionary Zoning**

148. In Tennessee, when a local government enacts a total exclusion of a legitimate business, the enactment is presumed invalid.

149. The burden is then shifted to the local government to establish that the total exclusion is for the purpose of promoting the health, safety, or welfare of the community.

150. The Hawkins County Resolution is unambiguous and in express terms completely bans all data centers and cryptocurrency mining, and does not allow for any variances, special use permits, or appeals process.

151. Hawkins County cannot meet its burden that a total prohibition of data centers and cryptocurrency mining, including ExoticRidge's operation, serves the purpose of the health, safety, or welfare of the public.

152. Hawkins County's total exclusion of a lawful business is invalid, and the Resolution banning data centers and cryptocurrency mining is ultra vires.

**SEVENTH CLAIM FOR RELIEF**

**Failure To Comply with Tennessee's County Zoning Act**

153. Under Tennessee law, local government "may not circumvent the legislative guardrails put in place to protect citizens' use of their property by 'labeling a zoning act a mere exercise of police power.'" *See Cherokee Country Club, Inc. v. City of Knoxville,* 152 S.W.3d 466, 471 (Tenn. 2004).

154. Hawkins County has not enacted county-wide zoning and thus has not established a regional planning commission or certified a zoning plan as set out in Tenn. Code. Ann. § 13-7-101 and § 13-7-102.

155. Nor did Hawkins County hold public hearings or publish notices in advance of said hearings as required under Tenn. Code Ann. § 13-7-104.

156. Hawkins County's Resolution totally prohibits data centers and cryptocurrency mining, substantially restricts land use, and is therefore equivalent to an exclusionary zoning ordinance.

157. The procedural requirements under Tennessee's County Zoning Act safeguard against the arbitrary exercise of power, and failure to comply with such requirements renders a zoning ordinance invalid.

158. Because Hawkins County did not enact its Resolution banning all cryptocurrency in accordance with the planning, public notice, and public hearing provisions under Tennessee's County Zoning Act, the Resolution is invalid and ultra vires.

**EIGHTH CLAIM FOR RELIEF**

**Tennessee's Open Meetings Act**

159. Tennessee's Open Meeting Act ("TOMA") provides that: "At least forty-eight (48) hours before a regular meeting, a state governing body or a local governmental body shall make available to the public, at no charge, the agenda for the upcoming regular meeting in a place accessible to the public. The agenda must reasonably describe the matters to be deliberated or acted upon during the public meeting." Tenn. Code Ann. § 8-44-110.

160. TOMA explicitly prohibits "withholding items from an agenda for the purpose of avoiding public disclosure of business to be considered". Tenn. Code Ann. § 8-44-110(c).

161. Under TOMA, a court may impose injunctions, impose penalties, and otherwise enforce the terms and purposes of TOMA. Tenn. Code Ann. § 8-44-106.

162. Hawkins County did not publish in its September 2025 Board of Hawkins County Commission Meeting that it would consider a Resolution banning all data centers and cryptocurrency mining within the County, or any other resolution that may impact ExoticRidge's planned facility.

163. Hawkins County did not make it public until the same day as the scheduled meeting on Monday, September 22, 2025, that a resolution banning all data centers and cryptocurrency mining was going to be introduced.

164. ExoticRidge was not fully aware of the Resolution until fifteen minutes before the scheduled County Commission meeting.

165. Hawkins County did not give adequate notice of its Resolution banning all data centers and cryptocurrency mining in violation of TOMA, and is thus null and void.

**PRAYER FOR RELIEF**

1. Declare that Hawkins County's Resolution banning all cryptocurrency mining and data centers unconstitutional under the Equal Protection and Due Process Clauses of the Fourteenth Amendment to the United States Constitution, Article I, Section 8, and Article XI, Section 8 of the Tennessee Constitution, and the Law of the Land Clause contained in Article I, Section 8 of the Tennessee Constitution;
2. Declare that Hawkins County's Resolution banning all cryptocurrency mining and data centers violates Tennessee state law and is therefore invalid and ultra vires;
3. Declare that ExoticRidge had a vested right to operate its Bitcoin mining facility;
4. Enjoin Defendant Hawkins County, its employees, agents, successors, assigns, and all persons acting in concert with Hawkins County from enforcing the Resolution banning all cryptocurrency mining and data centers. Or, in the alternative, an order enjoining Hawkins County from enforcing the Resolution banning cryptocurrency as applied to ExoticRidge.
5. Award all available compensatory damages in an amount to be determined;
6. Award pre-judgment and post-judgment interest as permitted by law;
7. Issue an award of attorneys' fees, costs, and expenses available under 42 U.S.C. § 1988 and Tennessee state law and;
8. Issue any other or further relief as the Court deems just and proper.

DATED: March 31, 2026

Respectfully submitted,

S/ Wencong Fa
Wencong Fa
B.P.R. No. 041768
wen@beacontn.org
BEACON CENTER OF TENNESSEE
54 Music Square East, Suite 125
Nashville, TN 37203
Tel.: 615-383-6431

Ben Stormes*
B.P.R. No. 041908
ben.stormes@beacontn.org
BEACON CENTER OF TENNESSEE
54 Music Square East, Suite 125
Nashville, TN 37203
Tel.: 615-383-6431
*Admission application forthcoming

*Counsel for Plaintiff*